IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02191-PAB-CBS

COREY BURGESS,
        Plaintiff,
v

CHARLES A. DANIELS,
PAUL A. KASTNER, and
PAUL M. LAIRD,
        Defendants.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

---

Magistrate Judge Shaffer

        This matter comes before the court on Defendant Daniels's Motion for Summary

Judgment (doc. #40) for failure to exhaust administrative remedies, filed on December 20, 2013.

Also before the court is Plaintiff's Motion for Entry of Default Judgment as to Defendants

Kastner and Laird (doc #56), filed February 24, 2014.   These motions were referred to the

Magistrate Judge pursuant to the Order of Reference dated October 23, 2013 (doc. #20).   This

court has carefully considered the motions and related briefing, the entire case file, the comments

offered by the parties during the January 23, 2014 Preliminary Scheduling Conference and the

February 20, 2014 Status Conference, and applicable case law.   For the following reasons, I

recommend that Defendant Daniels's Motion for Summary Judgment be granted, Plaintiff's

Motion for Entry of Default Judgment be denied, and entry of default as to Defendant Laird be

set aside.

## BACKGROUND

Mr. Burgess is a *pro se* prisoner litigant who was incarcerated at the United States Penitentiary, High Security, in Florence, Colorado ("USP Florence") when he filed a Prisoner Complaint (doc. #1) pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403, U.S. 388 (1971) and numerous statutes, alleging multiple constitutional violations and asking for money damages, among other relief.[1]  On August 19, 2013, the court granted Plaintiff's motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (doc. #3 and #4).

Plaintiff alleges a multitude of violations arising from an alleged assault that occurred in 2012 at the Federal Transfer Center ("FTC") in Oklahoma City, Oklahoma.  Plaintiff arrived at FTC on November 8, 2012, while en route to USP Florence.  Plaintiff alleges that upon arrival at FTC, correctional officers Thompson and Exina assaulted him when he refused to allow medical staff to administer an X-Ray.  Plaintiff was transferred to USP Florence one week later.  Plaintiff claims violations of his First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights as a result of the alleged assault, subsequent denial of medical treatment, and separation from his property.  Plaintiff further claims that Defendant Daniels, the Warden of USP Florence; Defendant Laird, the Regional Director of the North Central Regional Office; and Defendant Kastner, the Warden of FTC, violated Plaintiff's Fifth Amendment right to due process by interfering with his access to the administrative process.

On August 22, 2013, Plaintiff filed a Motion for Leave to File an Amended Complaint, in which he asserted that the Western, Eastern, or Northern District of Oklahoma was the proper

---

[1] Plaintiff seeks a laundry list of relief including the arrest of defendants outside of this court's jurisdiction; modification of Plaintiff's prison sentence; a public apology from prison medical staff for slander and defamation; that prison officials expunge an incident report; and that prison officials be enjoined from further abusing Plaintiff. (Doc. #1).

2

venue for adjudication of his claims (doc. #5).   Several days later, Plaintiff filed a combination

Motion for Change of Venue and Objection to Order, (doc. #6), wherein he asked the court to

transfer the instant action to the Western District of Oklahoma, and objected to the order granting

him leave to proceed pursuant to § 1915 on the basis that the court lacked subject matter

jurisdiction.   The court denied Plaintiff's Motion for Change of Venue on September 3, 2013,

and advised Plaintiff that he could initiate a new and separate lawsuit in the Western District of

Oklahoma (doc. #8).   The court further directed Plaintiff to file within thirty days an amended

complaint that complies with Fed. R. Civ. P. 8 and Local Rule 10.1 and asserts only claims that

are appropriate for the District of Colorado, and warned Plaintiff that failure to do so could result

in dismissal of some Defendants and claims without further notice.   The court denied Plaintiff's

objection on September 18, 2013 (doc. #12).

Instead of filing an amended complaint, Plaintiff appealed the court's September 3 and 18

orders overruling his objections to the United States Court of Appeals for the Tenth Circuit (doc.

#13).   On September 27, 2013, the Tenth Circuit ordered Plaintiff to show cause in writing

within twenty-one days why his appeal should not be dismissed for lack of appellate jurisdiction

because he had appealed from non-final orders (doc. #16).   On October 21, 2013, the district

court exercised its authority to proceed with this litigation in light of the fact that Plaintiff's

notice of appeal was deficient (*see Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340-41

(10th Cir. 1976)), and dismissed Plaintiff's first, second, and fourth claims for lack of personal

and subject matter jurisdiction and for failure to comply with Fed. R. Civ. P. 8 (doc. #17).

Accordingly, only Plaintiff's third claim for relief remains, which alleges that Defendants

Daniels, Laird, and Kastner violated Plaintiff's Fifth Amendment[2] right to due process by

---

[2] Plaintiff also alleges that this Fourteenth Amendment right to due process was violated; however, the Fourteenth Amendment applies only to action taken by the state government, and therefore is not applicable here because

interfering with Plaintiff's ability to access the Federal Bureau of Prisons' ("BOP") administrative grievance process. All other Defendants were dismissed from the lawsuit, and Defendants Daniels, Laird, and Kastner remain in the lawsuit in their individual and official capacities. Plaintiff filed a Motion on November 4, 2013 objecting to and requesting reconsideration of the district court's decision to dismiss Plaintiff's first, second, and fourth claims and refrain from transferring the case to the Western District of Oklahoma (doc. #24). Defendant Laird was served by certified mail in October 2013 and Defendant Daniels waived service the same month. To date, Defendant Kastner has not been served.

On December 20, 2013, Defendant Daniels requested leave to file the instant Motion for Summary Judgment (doc. #30) to argue that Plaintiff's surviving claim is barred for failure to exhaust BOP administrative remedies. Defendant attached a copy of the proposed Motion for Summary Judgment and exhibits to his written request. On January 7, 2014, Plaintiff filed a Response to Defendant Daniels's Motion for Leave (doc. #35), which incorporated a substantive response to Defendant's Motion for Summary Judgment; Plaintiff filed a related affidavit the same day (doc. #36). Defendant Daniels filed a Reply on January 17, 2014 (doc. #37). This court held a preliminary scheduling conference on January 23, 2014 (doc. #38), at which the undersigned stayed discovery pending resolution of the outstanding motions, granted Plaintiff's oral motion to withdraw his Motion for Objection and Reconsideration (doc. #24), and endeavored to ensure that Plaintiff understood the difference between a motion for summary judgment and a motion to dismiss for purposes of preparing a response that would adequately address the appropriate legal standard. This court granted Defendant Daniels's Motion for Leave

---

Plaintiff alleges conduct on behalf of federal actors only . U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or property, without due process of law"); *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) ("The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will....")..

to File Summary Judgment and accepted it for filing *nunc pro tunc* December 20, 2013, stating that Plaintiff's January 7 Response and Defendant's January 17 Reply rendered the Motion fully briefed (doc. #39).

Thereafter, on February 3, 2014, Plaintiff filed a motion requesting an extension of time to respond to Defendant's Motion for Summary Judgment (doc. #42), a motion requesting leave to file an amended complaint (doc. #43), and a motion requesting leave to file an amended Response to Defendant's Motion for Summary Judgment (doc. #44).  On February 10, 2014, Plaintiff filed a Motion objecting to this court's decision granting Defendant Daniels leave to file a motion for summary judgment (doc. #50).  Plaintiff moved for entry of default as to Defendants Laird and Kastner on February 13, 2014 (doc. #51).  The Clerk entered default as to Defendant Laird on February 14, 2014, but found that Plaintiff had submitted no proof of service for Defendant Kastner (doc. #52 and #53).  The same day, Plaintiff filed a second opposition brief to Defendant Daniels's Motion for Summary Judgment with an accompanying exhibit (doc. #54).

This court held a status conference on February 20, 2014 (doc. #55).  The undersigned explained to Plaintiff that if Plaintiff intends to file a motion for leave to amend his Complaint, he must attach a copy of the amended complaint to the motion.  This court then denied without prejudice Plaintiff's motion requesting leave to amend the Complaint (doc. #43) and Plaintiff's motion requesting leave to amend his Response to Defendant's Motion for Summary Judgment (doc. #44).  This court also denied as moot Plaintiff's motion requesting leave for an extension to respond to Defendant's Motion for Summary Judgment (doc. #42) and Plaintiff's motion objecting to the grant of leave for Defendant Daniels to file a motion for summary judgment (doc. #50).  On February 24, 2014, Plaintiff filed a Motion for Entry of Default Judgment as to

Defendants Laird and Kastner (doc. #56), and counsel for these Defendants filed a response on March 4, 2014 (doc. #59).

For the reasons stated below, this court finds that Plaintiff failed to exhaust his administrative remedies regarding the instant claim against Defendants, and that the right to access the PLRA grievance process is not protected by the Fifth Amendment.

## STANDARD OF REVIEW

A.    **Fed. R. Civ. P. 56**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994).  "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton,* --- S.Ct. ----, 2014 WL 1757856, at *4 (May 5, 2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).[3]  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson,* 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

---

[3] Copies of unpublished cases cited are attached to this Recommendation.

issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

When the affirmative defense of failure to exhaust administrative remedies is asserted in a motion for summary judgment, Defendants "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[ ] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including … summary judgment proceedings." *Id.* at n.3 (citations omitted). The *Haines* rule also instructs that a *pro se* litigant's complaint be "liberally construed to raise the strongest claims the allegations suggest." *Magassouba v. Cross*, No. 08 Civ. 4560(RJH)(HBP), 2010 WL 1047662, at *5 (S.D.N.Y. March 1, 2010) (internal citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). "Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs,* 117 Fed. App'x. 64, 69 (10th Cir. 2004)). Furthermore, the court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief may be granted.   28

U.S.C. § 1915(e)(2)(B)(ii); Fed.R.Civ.P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

**B.      Standard Under the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust administrative remedies before filing a civil rights action.   The statute provides, "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes.   *Id.* at 85; *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint).   Exhaustion of administrative remedies is mandatory and is intended to give correction officials an opportunity to address complaints internally before initiation of a federal lawsuit.   *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006).   Exhaustion is an affirmative defense, which necessitates that Defendants meet the burden of proving it by a preponderance of the evidence.   *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

The PLRA requires only that prisoners exhaust available remedies.   42 U.S.C. § 1997e(a) ("No action shall be brought ... until such administrative remedies as are available are exhausted.").   The Tenth Circuit interprets this provision to mean that if an administrative remedy is not available, an inmate cannot be required to exhaust it.   *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011).   A remedy is "available" under the PLRA if it affords "the

possibility of some relief for the action complained of." *Booth,* 532 U.S. at 738.   The Tenth

Circuit has held that an administrative remedy is not "available" under the PLRA if "prison

officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative

remedy." *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010); *see also Jernigan v. Stuchell,* 304

F.3d 1030, 1032 (10th Cir.2002) (holding that a prison official's failure to respond to a grievance

within prescribed time limit renders an administrative remedy unavailable).   Based on this

principle, the court must "ensure that any defects in exhaustion [are] not procured from the

action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th

Cir. 2007).


C.      **Fed. R. Civ. P. 55(a)**

        Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that

fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."   Fed. R.

Civ. P. 55(a).   In cases where the claim is not for a "sum certain," "the party must apply to the

court for a default judgment."   Fed. R. Civ. P. 55(b).   When a default judgment is entered, "facts

alleged in the complaint are taken as true, except facts relating to the amount of damages, which

must be proven in a supplemental hearing or proceeding."   *United States v. Craighead*, 176 Fed.

App'x 922, 925 (10th Cir. 2006) (quoting *Am. Red Cross v. Cmty. Blood Ctr. Of The Ozarks*, 257

F.3d 859, 864 (8th Cir. 2001)).   "[D]efault judgment must normally be viewed as available only

when the adversary process has been halted because of an essentially unresponsive party."   *In re*

*Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991).

A party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975)) ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). The first step before granting a motion for default judgment is for the court to ensure it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action. *See Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202–03 (10th Cir. 1986). Second, the court must consider whether the well-pleaded allegations in the complaint support a judgment on the claims against the defaulting defendant. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998) ("a party in default does not admit mere conclusions of law"); *see also Nishimatsu Constr. Co.,* 515 F.2d at 1206–08 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.,* 515 F.2d at 1206.

## ANALYSIS

### A.   Exhaustion of the Administrative Process under the Prison Litigation Reform Act

Defendant Daniels moves for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies under the PLRA. Daniels avers that Plaintiff does not claim that Defendants merely interfered with his ability to exhaust the four-tiered grievance process; rather, Plaintiff alleges that Defendants' interference constitutes a violation of his Fifth Amendment right to due process. Daniels argues that because this constitutional claim is separate from the underlying assault, Plaintiff was required to exhaust the grievance process for this distinct violation prior to filing this lawsuit.

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10 *et seq.* The first tier requires informal resolution with prison staff, which the prisoner requests with a form commonly known as a BP-8. *See* 28 C.F.R. § 542.13(a). A prisoner must obtain this form from his correctional counselor. The regulations allow the prisoner twenty days from the date of the incident to complete the informal resolution and file a formal Request for Administrative Remedy, if necessary. *See* 28 C.F.R. § 542.14. The prisoner must submit the formal inquiry, known as a BP-9 request, to the warden at the institution where the prisoner is incarcerated. *Id.* If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP-10 request, within twenty days of the warden's dated response. *See* 28 C.F.R. § 542.15(a). Finally, the prisoner may file a Central Office Administrative Remedy Appeal, known as a BP-11 request, with the BOP's Office of General Counsel within thirty days of the Regional Office's denial. *Id.* At any level, an official's failure to respond within the time allotted constitutes a denial of the request or appeal. 28 C.F.R. § 542.18.

Defendant Daniels bears the burden of proving his affirmative defense that Plaintiff failed to exhaust available administrative remedies. *Roberts*, 484 F.3d at 1241. The BOP regularly maintains records of administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a database known as SENTRY. (*See* Doc. #40-1 at ¶ 7). Daniels supplied, through the Declaration of BOP Senior Attorney Kara Lundy, a summarized account of every grievance Plaintiff has filed while under BOP custody. Ms. Lundy attested that none of Plaintiff's 186 grievances relate to his allegations that Defendants interfered with his access to administrative remedies, thereby violating his Fifth Amendment rights. (*See id.* at ¶ 15). In response, Plaintiff submitted copies of his administrative claims and appeals during the time in

11

question (doc. #36 and #54-1).   The grievances submitted by Plaintiff demonstrate that he attempted to exhaust his administrative remedies with respect to the alleged assault.   However, they do not include any attempts by Plaintiff to grieve interference with those efforts to pursue his administrative remedies.

Plaintiff argues that he should be excused from the exhaustion requirement because Defendants frustrated his efforts to pursue administrative relief for the alleged assault, thus rendering administrative remedies unavailable to him.   This argument may have been viable had Plaintiff not alleged that Defendants' interference constituted a separate, subsequent violation. Plaintiff alleges that Defendant Daniels interfered with the administrative process by failing to grant an extension of time for Plaintiff to file a BP-9 request regarding the assault, and for failing to properly supervise prison employees who misinterpreted and misapplied the regulations governing the Administrative Remedy Program.   Therefore, the allegedly violative conduct occurred after Plaintiff had filed the initial BP-8 request regarding the November 8, 2012 assault.[4]   A prisoner may grieve only one issue, or a "reasonably number of closely related issues," on one form.   28 C.F.R. § 542.14(c)(2).   Moreover, inmates are prohibited from raising new issues on appeal that were not raised in lower level filings.   *See* 28 C.F.R. § 542.15(b)(2).   A grievance satisfies the exhaustion requirements of § 1997e(a) when it "alert[s] the BOP officials to the nature of the wrongs by the prison staff," and "provides prison officials with enough

---

[4] On December 5, 2012, Plaintiff filed a BP-8 request regarding the assault at FTC.  This request and the following appeals were rejected as untimely, and Plaintiff was instructed by the Office of the General Counsel to file an explanation from prison officials on USP Florence letterhead acknowledging that Plaintiff was not responsible for the delay in initiating the grievance procedure.  Plaintiff filed a BP-9 request on March 27, 2013 seeking a formal explanation.  Defendant Daniels rejected this request on April 5, 2013 for Plaintiff's failure to first file a BP-8 request; the subsequent appeals were similarly rejected.  Plaintiff filed a final BP-8 request on June 5, 2013, again seeking a formal explanation on letterhead that the original delay was not through fault of his own.  Plaintiff received no response, and submitted a BP-9 request on August 7, 2013.  Defendant Daniels rejected the appeal on August 8, 2013, stating the appeal was untimely and no evidence existed showing that prison staff were at fault for the original delay.  Plaintiff filed a BP-10 request with Defendant Laird on August 14, 2013; the appeal was rejected on September 8, 2013 for the same reason as cited by Defendant Daniels.  Plaintiff filed a BP-11 request on September 16, 2013.  The Office of General Counsel concurred with the lower level findings, and instructed Plaintiff to file a memorandum from prison officials explaining that the delay was not Plaintiff's fault.

information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1283, 1285 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).   Finally, a grievance "cannot exhaust administrative remedies for claims based on events that have not yet occurred." *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Plaintiff cannot satisfy the PLRA's exhaustion requirement by subsuming his Fifth Amendment claim in his attempts to pursue administrative relief for the alleged assault.

Plaintiff has not shown, or even argued, that he initiated the administrative process to grieve the Fifth Amendment violation.   Accordingly, the undisputed facts establish that Plaintiff has not exhausted his administrative remedies regarding Defendant Daniels's allegedly violative conduct (or that of Defendants Laird and Kastner), and I must recommend that Defendant Daniels's Motion for Summary Judgment be granted.

Furthermore, Plaintiff has not stated a claim for a Fifth Amendment violation.   Access to a grievance procedure is not protected by the Due Process clause of the Fifth Amendment.   *See Green v. Corrections Corp. of America*, 401 Fed. App'x. 371, 375 (10th Cir. 2010).   Therefore, even if Plaintiff had exhausted his administrative remedies regarding Daniels's alleged interference, Plaintiff has not stated a claim for a constitutional violation for which relief can be granted.   While there is non-precedential authority in the Tenth Circuit that denial of access to the grievance procedure effectively denies a prisoner's access to the courts in violation of the First Amendment (*see, e.g., Purkey v. Green*, 28 Fed. App'x. 736, 745-46 (10th Cir. 2001)), Plaintiff has not alleged that he was denied access to the grievance procedure with respect to his Fifth Amendment claim.

**B.      Motion for Entry of Default Judgment**

Pursuant to Plaintiff's Motion (doc. #51), the Clerk entered default as to Defendant Laird on February 14, 2014 (doc. #52), but declined to enter default as to Defendant Kastner noting that Plaintiff had not filed the necessary proof of service for that Defendant (doc. #53).  Plaintiff sought entry of default judgment as to Defendants Laird and Kastner in a written motion filed February 24, 2014 (doc. #56).  Counsel for these Defendants submitted a Response on March 4, 2014 (doc. #59), arguing that Plaintiff's Motion should be denied for lack of proper service and jurisdiction, and asking to set aside the Clerk's entry of default as to Defendant Laird.[5]

Plaintiff filed the Complaint on August 14, 2013.  Eight months have passed and the record contains no proof that Defendant Kastner has been properly served.  Without such proof, this court lacks personal jurisdiction over Defendant Kastner and must dismiss him from the lawsuit without prejudice.  *See Arocho v. Lappin*, 461 F. App'x 714, 719 (10th Cir. 2012) (discussing the "established rule that dismissals for lack of personal jurisdiction are without prejudice").

Defendant Laird seeks to set aside the entry of default on the basis that this court lacks subject matter jurisdiction over Plaintiff's *Bivens* claim, or, in the alternative, this court lacks personal jurisdiction over Defendant Laird.  Courts "may set aside an entry of default for good cause."  Fed.R.Civ.P. 55(c).  "In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'"  *Pinson v. Equifax Credit Info. Servs.,* 316 F. App'x 744, 750 (10th Cir. 2009) (quoting *Dierschke v. O'Cheskey (In re Dierschke),* 975 F.2d 181, 183 (5th Cir.1992)).

---

[5] Though it is procedurally improper to request affirmative relief in a response brief, this court will address Defendant Laird's request in light of the disposition regarding Defendant Daniels's Motion for Summary Judgment.

The United States government has not waived sovereign immunity for *Bivens* claims brought against federal employees acting in their official capacity.  *See, e.g., Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) ("There is no such animal as a *Bivens* suit against a public official ... in his or her official capacity.").  Thus, this court lacks subject matter jurisdiction over Plaintiff's *Bivens* claim to the extent he sued Defendant Laird in his official capacity.  To the extent Plaintiff sued Defendant Laird in his individual capacity, there is no proof that Laird has been personally served.  Service by certified mail does not suffice to effect proper service of a United States employee in his individual capacity.  *See* Fed.R.Civ.P. 4(i)(3).  Moreover, nothing in the record indicates that Defendant Laird's failure to respond to Plaintiff's Complaint was willful; Defendant Laird can assert the defense that Plaintiff failed to exhaust his administrative remedies; and setting aside the entry of default should not prejudice Plaintiff given the recommendation that his final claim be dismissed.  For these reasons, I recommend setting aside the entry of default.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendant Daniels's Motion for Summary Judgment (doc. #40) be GRANTED, Plaintiff's Motion for Entry of Default Judgment (doc. #56) be DENIED, the Clerk set aside entry of default as to Defendant Laird (doc. #52), and Plaintiff's Complaint (doc. #1) be dismissed without prejudice.

### Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 8th day of May, 2014.

BY THE COURT:


s/Craig B. Shaffer_____
United States Magistrate Judge